JACOB VANWICKLE vs. THE CAMDEN AND AMBOY RAIL ROAD AND TRANSPORTATION COMPANY.

A party dissatisfied with the conduct of the commissioners appointed under the act incorporating the Camden and Amboy Rail Road and transportation Company, or with their report, may have either a certiorari, or may proceed under the act by application to this court to set aside the report. The remedies are cumulative, not inconsistent. The legislature contemplated no appeal to a jury, but on the subject of damages, and that nothing is " good cause " for setting aside the report, on motion in this court, but such matters as lead to a reasonable apprehension, that injustice has been done in settling the amount of damages; or some improper conduct on the part of the commissioners, the company, or their agents, in regard to the assessment.

Objections, that there was a mistake in locating a part of the land in a wrong township, or that the engineer did not specify all the lands taken, cannot be considered on an application to set aside the report of commissioners.

A special authority delegated by an act of the legislature, to particular persons, to take away a man's property and estate against his will, must be strictly pursued and must appear to be so upon the face of the order, and that where a particular

Vanwickle *v.* Rail Road Co.

notice in writing, is directed to be given, by the act, it is not sufficient to say, " upon proof of due notice having been given," but it ought to appear on the order, *what notice was given.*

The commissioners have no power to swear nor to examine witnesses. In doing so, they exceed their authority. They are to judge from inspection, from their own view and examination of the premises.

This was an application made by Jacob Vanwickle to set aside the report of commissioners appointed under the act of the legislature of this state incorporating the Camden and Amboy Rail Road and Transportation Company, passed February 4th, 1830. At the last term, *W. Halsted* and *I. H. Williamson,* argued in support of the application, and *J. H. Sloan* and *S. L. Southard,* contra; and that this term the following opinions were delivered.

HORNBLOWER, C. J. The view taken of this subject in the case of Bennet and the Rail Road Company, has anticipated much of what was said on the argument of this case. It is unnecessary therefore to repeat my opinion, that we cannot, on this motion, look into the proceedings prior to the appointment of commissioners. In fact, none of those proceedings are brought in question in this case, except that it is alleged, and no doubt is so, that the specification furnished by the engineer, does not embrace all the land of the applicant, covered by the road ; and some part of the land mentioned in the specification, is mislocated; that is, described as being in one township, when in fact, it lies in another.

This might be a fatal objection if the whole matter was before the court in such a shape as to demand our judgment upon it. But we are not now exercising our *general common law* superintendance over inferior and temporary jurisdictions ; but we are ourselves, on this motion, exercising a *special and delegated power.* We could not entertain this motion for a single moment, if the legislature had not, in so many words, authorized us to do so. We are a *temporary and special* jurisdiction for this purpose ; and we must look to it, that *we* do not exceed and misuse our special and delegated authority. What then has the legislature authorized us to do in this summary manner ? They

have told us, in the plainest and most unambiguous language, that upon the application of either party, dissatisfied with the *report* of the commissioners, we may, *for good cause shewn*, set aside *the report.* They have not substituted this preceding in the place of the common law remedy by certiorari. Nor have they taken away the power of this court to allow, or the right of the party to the benefit of that writ. The remedies are cumulative, not inconsistent; and I apprehend, that not only the appointment of commissioners and the proceedings previous thereto, may be reviewed on certiorari, but that a party dissatisfied with the conduct of the commissioners, or with their report, may, at his election, have a certiorari, or proceed under the act, by an application to this court to set aside the report.

I will not say, whether after an application to, and a hearing before this court, he may or may not, have a certiorari to review the proceedings of the commissioners. But I am of opinion, that when a party comes into court and seeks relief in the summary mode pointed out in the act, it is an affirmance of all the proceedings prior to the appointment of the commissioners, and of all the proceedings of the commissioners themselves, *except* so far as any informality on the part of the commissioners, had, or may be presumed to have had, an unfavorable influence, or operated to the prejudice of the party in respect to the amount of his damages.

He cannot come into this court, *on motion*, with any complaint, *except*, that he is dissatisfied *with the report*: and when he asks us to set aside the report, it is, at least for that purpose, a waiver of all irregularities except such as may be supposed *to have* had an influence in fixing the amount of the damages. That I am right in this view of the subject, I think may be fairly argued from the provisions and spirit of the fourteenth section of the charter. It enacts, that if the jury shall be applied for by the owner, and shall find *the same* or *a less sum* than the company have offered, or the commissioners awarded, *then* the *costs* of the trial shall be paid by the applicant. Now, if the legislature intended that we should set aside the report, on the ground of errors and mistakes in the engineer's specification, or in the mode of appointing commissioners, is it probable they would subject the owner of the land to the payment of costs? It would

Vanwickle *v.* Rail Road Co.

in effect, be saying to the land holders, no matter how unlawfully the company and their agents may proceed, if you appeal to a jury, it shall be at the risk of paying costs. It is clear to my mind, that the legislature contemplated no appeal to a jury, but on the subject of damages; and that nothing is "good cause" for setting aside the report, on motion in this court, but such matters as lead to a reasonable apprehension that injustice has been done in settling the amount of damages, or some improper conduct on the part of the commissioners, the company, or their agents, in regard to the assessment.

Then, as to the mistake in locating a part of the land in a wrong township; could that have had any influence on the minds of the commissioners in assessing the damages? It could not by any legal necessity; and if it had any accidental influence, or in any way operated to the prejudice of the owner, it ought to be shown.

Again, as to the objection, that the engineer had not specified all the lands of Mr. Vanwickle taken by the company, and that consequently the commissioners had not appraised the part omitted, the specification of the engineer was probably erroneous, but we cannot correct that error on this application. If we set aside the report, the error will remain; the commissioners did right to assess only the lands specified; and if we award a trial by jury, they can do no more. The parties must devise some other mode of correcting those mistakes. We cannot reach them in this way. The jury are to assess the value of the " *said lands and materials*;" that is, the lands and materials described by the engineer; and he is to describe the lands and materials required for the road, and about which the parties cannot agree.

There is, in this case, no question made as to the regularity of the appointment of the commissioners; but it is objected,

1st. That there is no proof of service of notice on Mr. Vanwickle of the time and place of meeting of the commissioners.

2d. If duly served, and sufficient proof of it, the notice was insufficient.

3d. That two only of the commissioners met on the day appointed, and were sworn into office; that they then adjourned to another day, and that those two, *at least until* the other com-

missioner had been sworn into office, had no power to adjourn; as they did not constitute a board of commissioners, and could do no act as such, until they were all sworn.

4th. That no lawful notice was given to Mr. Vanwickle of such adjournment from the ninth to the eleventh of April.

I would content myself with giving the same answer to these objections, that were intimated in Bennet's case, viz: that Mr. Vanwickle waived these objections by attending before the commissioners and urging his claims; was it not that the counsel on the argument of this case, urged with great earnestness, that an appearance, or any express or implied waiver of what, by law, ought to be done, would not give jurisdiction to the commissioners, whose authority was special and delegated; and in support of which doctrine, the case of *Rex* v. *Croke, Cowp.* 30, among others, was relied upon. But the answer to all this is, that the question of jurisdiction is not now before the court. The application to this court, to set aside the report and grant a trial by jury, goes upon the ground that the commmissioners had jurisdiction, and this proceeding is in the nature of an appeal from their decision. I fully adopt the sentiments and the language of Lord Mansfield, in the case cited, that a special authority delegated by act of Parliament, to particular persons, to take away a man's property and estate against his will, must be strictly pursued, and must appear to be so upon the face of the order, and that where a particular notice in writing, is directed to be given by the act, it is not sufficient to say " upon proof of due notice having been given;" but it ought to appear on the order, *what notice was given.* .

But it must be remembered that the *order* or proceedings, spoken of by his lordship, were then before the court on certiorari, while in the present case, the proceedings, or what may more properly be called *the record, is not judicially before us.* The parties have brought here and read a paper purporting to be a copy of the record, for the purpose of ascertaining to the court, the amount at which the commissioners assessed the damages; they might have informed us in some other way; it may be a correct copy, and it may not. It was not brought here in obedience to any command of this court. They have no right to come here with that paper in their hands, and com-

plain that it does not contain all that it should contain, or in such form as it should be. We can render no judgment upon it. The statute does not authorize the court, *upon motion* to adjudicate upon or to set aside the record. We must confine ourselves to the inquiry, whether there is " good cause " shewn to set aside the *report* of the commissioners ; and if the party wishes to go further and invalidate the proceedings of the company and the commissioners, he must bring the record before us judicially.

I have said thus much upon this topic, not only as due to the learned counsel, who pressed the general doctrine upon the court, but because it may save time and expense to other parties and limit the debate to appropriate subjects.

Nevertheless, in this case, there has been " good cause " shewn in my opinion, to set aside this report.

First. The commissioners examined witnesses under oath. In doing so, they exceeded their authority ; they had no power to swear nor examine witnesses ; such proceedings were *coram non judice* ; and whether the witnesses were all on one side, or on both sides, makes no difference ; the commissioners resorted to a mode of gaining information and forming their opinions, from a source not warranted by law. The commissioners are to judge from inspection, from their own view and examination of the premises. The court cannot tell what influence the testimony of witnesses may have had on their judgments. It may have had none ; it may have been favorable to the owner, or it may not. Witnesses, however, were examined on both sides, as appears by the deposition of William Cook, and others. Several of the persons whose depositions have been read on this application, testify that they consider the rail road a benefit rather than an injury to the applicant. Some of them say they were examined as witnesses before the commissioners, and if they testified in the same manner, then the evidence was unlawful ; for by a supplement to the charter, the commissioners are not to take into consideration any real or imaginary benefit to the owners. But

Again, Secondly. The commissioners reported in favor of the applicant, six hundred and sixty-eight dollars ; and I think upon reading the depositions on the one side and the other,

there is probable ground to apprehend, that justice has not been done. It is not for the court to weigh the evidence, and to estimate the damages. But the discrepancy is so great between the report of the commissioners and the estimated injury to the applicant, as testified to by some of the witnesses, that I think he has reasonable ground to complain, though that complaint may, in fact, turn out to be unfounded.

In *Swinnerton* v. *Marquis of Stafford*, 3 *Taunt.* 91, it was held, that where there had been but a short time for investigating a question of real property, of a doubtful and obscure nature, and of great value, although conflicting evidence has been left to the jury, and the court *does not* think their verdict wrong, *yet if the inheritance is to be bound*, the court will grant a new trial. In the case before the court, though the property may not be of great value, yet the amount of damages is uncertain, doubtful and difficult to be accurately and justly estimated, as manifestly appears from the conflicting evidence before the court. The time taken for the investigation was short, and the proceedings of an extra judicial and summary character.

" Next to doing right," says the learned and eloquent Blackstone, " the great object in the administration of public justice, should be, to give public satisfaction." This principle, in my opinion, as well as sound discretion in the court, and I may add, the best interest of the company itself, requires, that the claims of the land holder in this case should be submitted to a jury.

FORD, J.   My observations relative to the constitutionality of this law, and the implied waiver of any irregularity in proceeding under it, so far as the nature of this application is concerned, are as proper to this case as to that of James Bennet, and may be considered as referred to without being again repeated.   ·

The road, in this case, is laid through an orchard, where it takes fifty apple trees and forty-five peach trees; it is thirty-seven chains and twenty links in length; it requires four hundred and eighty-three pannels of fence, and occupies three acres and eighty-seven hundredths, of land.   It has made a deep cut through the hill where the house stands, and requires thirty yards of stone wall to uphold the bank next to the foundation of

the dwelling-house, and prevent its caving into the channel below. The commissioners have reported for the applicant's land and damages, six hundred and sixty-eight dollars.

The court, in forming an opinion, whether this sum will cover the value of the land and damages, must take the evidence on these points from the affidavits laid before it. The estimates contained in them state the value of the land in various forms ; one represents the land with its improvements and trees, as being worth one hundred and fifty dollars an acre; another takes the land by itself, at forty dollars an acre, and then estimates the trees separately, whereby it raises the value still higher. If we moderate these conflicting statements a little, and put the land with all its improvements at one hundred and twenty dollars an acre, we should have four hundred and sixty dollars for the value of the land. If we add to this sum, the cost of four hundred and eighty-three pannels of fence at seventy-five cents, we shall find these two items alone, amount to the sum of eight hundred and twenty-one dollars, which is one hundred and fifty-three dollars more than the whole sum reported ; without allowing any thing as yet, for thirty yards of stone wall to support the foundation of the house, the cost of which is estimated at two hundred dollars. This difference appears to me, a sufficient cause for putting the value and damages at issue, and having them submitted to a jury in the form directed by the statute.

Trial ordered.

CITED in *N. J. R. R. & Tr. Co.* v. *Suydam,* 2 *Harr.* 72 ; *Coster* v. *N. J. R. R. Co.,* 3 *Zab.* 234 ; *Readington* v.*Dilley,* 4 *Zab.* 215 ; *Coster* v. *N. J. R. R. Co.,* 4 *Zab.* 734 ; *City of Camden* v. *Mulford,* 2 *Dutch.* 55 ; *State* v. *Jersey City, Id.* 450 ; *State* v. *Orange,* 3 *Vr.* 55 ; *Columbia Delaware Bridge Co.* v. *Geisse,* 6 *Vr.* 475.